LEHON v. N. O. PUB. SERVICE, INC.

(April 29, 1929. Opinion and Decree.)

Weiss, Yarrut & Stich, Lois H. Yarrut and H. W. Robinson, of New Orleans, attorneys for plaintiff, appellant.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Plaintiff received severe injuries as a result of a collision between his automobile and a street car of defendant company, in the late afternoon of March 8, 1926.

The automobile, operated by the chauffeur of plaintiff, with plaintiff himself seated on the front seat alongside the chauffeur, was proceeding out Metairie Road towards the 17th Street Canal Bridge. For a distance of several hundred yards that road is bordered on one side by a canal and hedge alongside Metairie Cemetery and on the other side by the golf course, border fence and hedge of the New Orleans Country Club. There is a single track street car line of defendant company on the country club side of the roadway. This track parallels the roadway for a distance of some four or five hundred yards and then crosses it at an angle and enters a private right-of-way on the other side. From this point to the 17th Street Canal several hundred yards away the road and street car track again run parallel but there is between them an intervening space of some 30 or 40 feet. The inbound and the outbound street cars use the track alternately.

The street car which collided with plaintiff's automobile was on its way towards the new basin canal. It, and the automobile, were thus proceeding in opposite directions. They met in almost a head on collision.

Plaintiff charges that the street car was being operated at too fast a speed, that no warning signals were given by it, and that the motorman was not looking to the front. Plaintiff also contends that the failure of defendant to erect warning boards or lights at that unusually dangerous traffic intersection, in itself constitutes negligence.

Defendant denies all negligence on its part and charges that the proximate cause of the accident was the excessive speed of the automobile and the fact that the chauffeur, though familiar with the locality, failed to stop or to look or to listen for an approaching car.

It is claimed by plaintiff that the hedge, which borders the roadway, and a large tree and other shrubbery alongside the roadway obstructed the view of himself, his chauffeur and all those in his automobile and interfered with their sight of the approaching car.

According to plaintiff, there are some features which differentiate this case from the usual cases of collisions between street cars and automobiles at street crossings and intersections, and which, so plaintiff's counsel argues, prevent the application of the well recognized principle that, although defendant's employees may have been at fault, nevertheless the injured party cannot recover if, by the exercise of the senses of sight and hearing on his part or on the part of his chauffeur the accident could have been avoided. Plaintiff argues, for instance, that this was not a crossing because the street car tracks did not completely cross the roadway but turned into it and then extended along one side of it.

As authority in support of this contention, our attention is directed to certain decisions to the effect that streets which do not extend across other streets but which connect from only one side do not cross them. We do not think that this reasoning has any application here as it is perfectly plain that the route of plaintiff's automobile would necessarily take it across the car track and it was therefore the duty of the driver to look and to listen to determine whether a car was approaching.

It is quite true that if, as a result of obstructions or of the particular angle at which the track intersected the roadway, an unusually hazardous situation was created, it was defendant's duty to see that extraordinary precautions were taken by those operating its cars. Schwartz vs. Railway Co., 110 La. 543, 34 So. 667.

In Elliot on Roads and Streets (2d Ed.) Par. 891, p. 856, we find the following:

"If a railroad company, in the management of its traffic, causes unusual peril to travelers, it should meet such peril by corresponding precautions. So, where the crossing is especially dangerous to travelers on account of its locality or mode of construction, or because the track is curved, or the view obstructed, it is the duty of the company to exercise such care and take such precautions as the dangerous nature of the crossing requires."

But where plaintiff is familiar with the situation is he not bound likewise to take unusual care? That plaintiff and his chauffeur, Bell, were familiar with this crossing and had crossed it on many occasions is admitted by both of them. In the record we find the following admission of plaintiff:

"Q. He had frequently been over that road with you, had he not?
"A. Yes, sir."

The "he" referred to in the above question was plaintiff's chauffeur, Bell. Bell, himself, in this connection testified:

"Q. You had driven by there lots of times?
"A. Well, pretty regular, yes, sir, off and on."

Conceding then that the crossing, unguarded and built, as it was, at an angle, was more than usually hazardous, the effect of this extraordinary hazard as the proximate cause of the accident is lost when it appears that plaintiff and his driver were well acquainted with the unusual peril and yet not only took no unusual precaution but, in fact, took none at all.

That the approaching street car was plainly visible is shown by the fact that Schillinger and Neilsen, who were in an automobile just ahead of plaintiff's car, stopped about forty or fifty feet from the track to allow the street car to pass. Schillinger testified:

"Q. Did you see any reason for your automobile to stop?
"A. For my automobile to stop?

"Q. Yes?

"A. Well, we were really running slow, and, seeing the car approaching, yes, the electric car.

"Q. You stopped then because you saw a car approaching?

"A. Yes, sir."

While Schillinger and Neilsen were stopped waiting for the street car to cross the roadway in front of them, plaintiff's car, which had, up to that time, been following them, passed them on their left and, continuing at a speed of about twenty or twenty-five miles an hour, ran headlong into the approaching street car. Neilsen's testimony with regard to the speed and careless operation of plaintiff's car is quite illuminating.

"A. As we were making the stop, when we slowed down to make the stop, somebody had blowed their horn—they blew their horn, I believe, twice, in the back of us, and they pulled around us, and, as we came to a stop, they approached out and that's when the street car—when we stopped, the street car was at the gutter curb, and by that time the other automobile was in the center of the road, and that's when the same time the street car reached that they hit into each other.

"Q. So you were making the stop, then, and this automobile which had blown for you to get out of the way, passed you, did it?

"A. Yes, sir.

"Q. At what speed was it running, could you say?

"A. Oh, twenty or twenty-five miles an hour or so.

"Q. Did that automobile slow up before it reached the track?

"A. It was too late for it to slow up."

That Schillinger and Neilsen saw the car is proof positive that had plaintiff's chauffeur looked he too, could have seen it.

That plaintiff, himself, saw the car when it was still some distance away is shown by his testimony that he shouted to the motorman several times to call his attention to the danger. It is a well known fact that an automobile can be stopped in a much shorter distance than can a street car and if, after he saw the street car, plaintiff had time to shout several times to the motorman and if, as plaintiff would have us believe, the motorman, had he heeded those shouts, would have had time to stop, we cannot understand why plaintiff's chauffeur could not have stopped in that same time unless he was going too fast or was not looking.

The chauffeur attempts to lay the blame for his not seeing the car on a large oak tree which was located between the roadway and the track, and on the hedge alongside of the roadway. The hedge was shown positively to have been only about three feet high, and, as the street car was ten or twelve feet high, it is manifest that the obstruction to the view created by the hedge, was of no importance. The oak tree was one hundred feet from the point of the collision. In other words, the street car had passed the tree and had proceeded one hundred feet beyond it when the accident occurred so that this tree was in no sense a contributing factor to the result.

The speed of plaintiff's machine was at least twenty or twenty-five miles per hour. In all probability it was greater than this. Such a speed, while perfectly safe in the open country, is grossly excessive in a dangerous locality such as that was. The charge that there was a continuous stream of traffic going both ways on that roadway is not borne out by the evidence and we are convinced that at the time of the accident there were only a few automobiles in that immediate vicinity.

Since we are of the opinion that the proximate cause of the accident was the negligence of the driver of plaintiff's car, it will serve no good purpose to discuss the question of whether or not there was negligence on the part of the defendant, as the law is well settled that where an accident is caused by the contributing negligence of a person injured, he cannot recover notwithstanding the fact that the other party may also have been at fault.

Gibbons vs. New Orleans Terminal Co., 159 La. 347, 105 So. 367.

Townsend vs. Missouri Pacific R. R. Co., 6 La. App. 303.

Eyma Brown vs. Railroad, 42 La. Ann. 350, 7 So. 682.

The trial judge set aside a verdict for plaintiff, so certain was he that plaintiff and his chauffeur was guilty of contributory negligence. We find in his reasons for judgment a statement that he visited the scene of the accident to convince himself that the opinion which he had gained from the evidence was correct. He then rendered judgment in favor of defendant. Under such circumstances we feel that his opinion should be given extraordinary weight and our study of the evidence convinces us that his judgment was entirely correct.

For these reasons, it is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.