No. 3506

Second Circuit

## McQUISTON v. SHREVEPORT· RYS. CO.

(November 18, 1929. Opinion and Decree.)
(March 10, 1930. Certiorari Refused
by Supreme Court.)

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

REYNOLDS, J. Plaintiff, Ellis McQuiston, sued the defendant, Shreveport Railways Company, for judgment in the amount of $8,103, as damages for personal injuries alleged to have been sustained by him in a collision between a motortruck on which he was riding and a street car owned and operated by defendant. And, by supplemental petition, he increased his demand to $18,103. He alleged that the motorman of the street car negligently drove it into the truck on which he was riding.

The defendant denied the negligence charged, averred that its motorman was without fault in the premises, and alleged that the sole cause of the collision was the negligence of the plaintiff and the driver of the truck on which he was riding, in that they failed to maintain a lookout for street cars approaching on the track before attempting to drive the truck across the track, and in driving it across the track in such close proximity to the street car for it to be impossible for the motorman to stop the car before striking the truck, and in crossing the street at a place other than an intersection of streets, in violation of an ordinance of the city of Shreveport. In the alternative it alleged that, if it was guilty of any negligence and such negligence contributed to cause the accident, plaintiff was negligent in that he failed to maintain a proper lookout for his own safety, was in a dangerous and careless

position on the truck, and failed to observe the approach of the street car and to warn the driver of the truck thereof in time to enable him to avoid placing the truck in front of the street car, and that such negligence contributed to cause the accident.

On these issues the case was tried to a jury, prayed for by plaintiff, and a verdict having been returned in his favor and judgment entered in accordance therewith, defendant appealed.

## OPINION

The accident happened in the city of Shreveport, La., on Texas avenue, between Cotton and Crockett streets, at about 10 o'clock at night of June 23, 1927.

Texas avenue, at the place where the accident happened, runs practically north and south, and is 54 feet wide between the curbs. It has double street car tracks extending down its center, and between the outside rail and the curb on each side of the street there is a space 20 feet wide. These spaces constitute one-way roads on each side of the street.

Plaintiff was riding on a "Ford" truck which was being driven by one Langford south on Texas avenue.

Defendant's street car was moving north on Texas avenue on the east pair of rails.

When the truck on which plaintiff was riding had traversed about three-fifths of the distance between Crockett and Cotton streets and had reached a point approximately on a line with the place of business of Bauman Brake Service, which is situated on the east side of Texas avenue, the driver of the truck turned it to his left for the purpose of crossing the street car tracks and entering the warehouse of Bauman Brake Service, and as it was crossing the tracks it collided with the street car.

The record contains more than 500 pages of testimony, but the able briefs of counsel for plaintiff and counsel for defendant reduce the questions to be decided by us to three, namely:

1. Was the motorman on defendant's car negligent?

2. Were plaintiff and the driver of the truck negligent?

3. Had the motorman on defendant's car the last chance to avoid the accident, and did he fail to avail himself of it?

The plaintiff testified:

"Q. What part of the street was that truck running on?

"A. It was running on the outside rail on the side of the street.

"Q. How came it to be hit by the street car?

"A. Well, went there to make a left turn, left hand turn, and stopped on that side of the street and let some cars go by, car coming behind us and one coming in front of us, and we let them go by.

"Q. Then what did you do?

"A. Made a left hand turn. The driver held out his hand to make the turn.

"Q. Just where was the truck when t was hit?

"A. The front wheels were sitting on the outside of the left hand rail of the street car track coming in. * * *

"Q. You mean the side over toward the 'Bauman Service' Station'?

"A. Yes, sir. * * *

"Q. Now the 'Ford' truck had a cab on it?

"A. Yes, sir. * * *

"Q. You say your feet were hanging out?

"A. Yes, sir. * * *

"Q. About how fast were you all driving out Texas avenue, Mr. McQuiston?

"A. About fifteen miles an hour. * * *

"Q. Now, as he came to turn, in making that turn, did he turn straight across the street, or diagonally?

"A. We stopped before we made the turn.

"Q. But when he made the turn, how did he make it, straight across the street, or at right angles, or a little circular turn?

"A. He continued out Texas avenue, and stopped, and then he made the turn.

* * *

"Q. Now, Mr. McQuiston, what part of the truck was it that struck the street car, do you know?

"A. The street car struck the truck right behind the front fender; hit the cab. * * *

"Q. That is just about where your legs were?

"A. Yes, sir. * * *

"Q. Where was the street car, when you first saw it, Mr. McQuiston?

"A. It was right at us.

"Q. You could see down that street— you say that you had been watching out for the street car?

"A. Yes, sir.

"Q. You were not depending on Mr. Langford's observation but you were looking out for yourself?

"A. He looked when he stopped; looked both ways.

"Q. And you did too?

"A. Yes, sir, I looked both ways before he made the turn. I looked again and I did not see anything.

"Q. You looked for yourself to see if a street car was coming?

"A. Yes, sir.

"Q. Of course you knew that street cars come on that track?

"A. Yes, sir.

"Q. You knew that automobiles come along there?

"A. Yes, sir.

"Q. And you were watching out for your own protection?

"A. Yes, sir.

"Q. If you had seen a street car or an automobile or a truck coming past, you would have reminded Mr. Langford not to go on the track—would have warned him?

"A. Yes, sir.

"Q. But you saw none?

"A. I did not see any. * * *

"Q. Here is what I mean. After Mr. Langford started the truck up, started moving across the street, how quickly could that truck have been stopped, that is, while he was moving along there, by putting on the emergency brake, within what distance could it have been stopped? A foot, or six feet?

"A. It could have been stopped at once.

"Q. Almost instantly?

"A. Yes, sir.

"Q. It would not have gone six inches?

"A. No, sir.

"Q. Now, Mr. McQuiston, looking down Texas avenue in the direction in which you had been going, after this automobile passed you coming towards town, there was nothing in the way of you out there to keep you from seeing up Texas avenue?

"A. No, sir; not that I seen.

"Q. Then why didn't you see the street car as it was coming down there?

"A. Because I did not see it."

At another place in his testimony he said:

"Q. Mr. McQuiston, when that truck came to a stop, as you have testified, which way were you facing?

"A. I was facing south.

"Q. Did you see the street car when you stopped?

"A. No, sir, I did not.

"Q. Was there one in sight?

"A. No, sir.

"Q. When did you first know that the street car was running down on you, and that it was about to strike the car, Mr. McQuiston?

"A. It was after we had gotten across on the track. I looked and seen that the street car was about to hit the truck.

"Q. Was that the first time that you saw it?

"A. Yes, sir. * * *

"Q. Was there anything in Mr. Langford's way, between him and the street car, as the truck turned to go across the street?

"A. No, sir."

Charles Langford, the driver of the Ford truck, testified:

"Q. In making that turn, what was done? What was done on the truck just before you started to turn?

"A. I held out my hand and stopped before I turned, and there was a car

coming behind me and blew the whistle and I waited for him to go by, and in the meantime some were coming this way on the other side of the street; and they got clear of the street and I started across. * * *

"Q. You stopped still?

"A. Yes, sir. * * *

"Q. And as you made your left turn and started into that vacant lot, what, if anything, obstructed the car there or prevented you from seeing down the street?

"A. There was not anything when I first started across, but I got to the angle, the 'Big Boy' (meaning the street car) was on there. * * *

"Q. Did you get across to the vacant lot?

"A. No, sir; just about the time I got half way across the track, the street car hit me back of the cab. * * *

"Q. Did you see any headlight on the street car as it approached you and hit the truck?

"A. No, sir.

"Q. I thought you said that you did not see the street car?

"A. I did not see it until it hit us.

"Q. Did you have headlights on your truck?

"A. Yes, sir.

"Q. Were they burning?

"A. I suppose so; they were burning when we left the garage. * * *

"Q. While you were in that position, could you look forward and see what was coming?

"A. Yes, sir; I looked forward.

"Q. You could see up there?

"A. Yes, sir.

"Q. He (meaning plaintiff) was looking forward too?

"A. Yes, sir.

"Q. He did not at any time warn you that the street car was coming, or tell you to stop?

"A. No, sir; undoubtedly he didn't see it until it hit us.

"Q. You didn't actually see it until it actually struck you?

"A. No, sir; it had done hit us before I knew it was coming. * * *

"Q. If you did not see the street car until it hit you, you don't know whether it had a headlight or not, do you, Mr. Langford?

"A. No sir."

Section 9 of Ordinance No. 4 of the year 1915 of the city of Shreveport was introduced in evidence, and provides:

"Vehicles crossing from one side of the street to the other, shall do so by turning to the left so as to head in the same direction as the traffic on that side of the street toward which the crossing is made, **and shall only turn at intersections.**" (Bold type ours.)

It appears, then, that an effort was made, by the driver of the truck, with plaintiff's knowledge and consent, to turn the truck at a right angle and drive it across the double street car tracks between street intersections in violation of an ordinance of the city and that in the attempt the truck was negligently driven in the path of a moving street car and struck by it.

The evidence shows that from the point where plaintiff says the truck was at the time it turned to cross the street car tracks, the driver of the truck and himself had an unobstructed view of the car track in the direction from which the car came for more than 400 feet.

There is an irreconcilable difference between the testimony of the plaintiff and that of the driver of the truck as to the speed of the truck when it was crossing the tracks.

Plaintiff testified:

"Q. Now, you—now, after you made the stop and started across the street, you were traveling very slowly, were you not?

"A. Yes, sir; was just barely creeping along.

"Q. Just barely moving?

"A. Yes, sir."

Langford, the driver of the truck, testified:

"Q. Do you know how fast your car was running at the time, as regards the

street car, when the street car hit it at that time?

"A. No, sir; but not very fast; six or seven miles an hour; not very fast; pretty fast in low gear, probably nine or ten miles an hour."

Inasmuch as neither plaintiff nor the driver of the truck saw the street car before the instant of the collision, although both of them had an unobstructed view of the street for over 400 feet in the direction from which the street car came, it is manifest that neither of them could have been keeping a lookout for vehicles likely to get in the path of the moving truck and that both of them were negligent.

"One who attempts to drive a wagon across a street railway track in front of an approaching street car, that could and should, with reasonable care, be seen and heard approaching, is guilty of negligence, and is not entitled to damages for injuries received from a collision with the street car." McShane v. N. O. Ry. & Lt. Co., 137 La. 830, 69 So. 268; Marston v. Shreveport Traction Co., 140 La. 18, 72 So. 794.

"Neither occupant of the vehicle can recover when it is shown that the proximate cause of the accident was the failure of both to have seen what each of them should have seen." Toups v. Morgan's L. & T. R. R. & S. S. Co., 4 La. App. 136. Bradley v. Mo. Pac. R. R. Co., (C. C. A.) 288 F. 484. Noble v. C. M. & St. P. Ry. Co. (C. C. A.) 298 F. 381.

Whether the motorman on the street car had or had not the last chance to avoid the collision turns on the distance the truck was from the street car when the former began to move across the tracks.

Neither plaintiff nor the driver of the truck, Langford, could have any estimate of this distance, for the reason that neither of them saw the street car before the moment of the collision.

Plaintiff's witness Travis fixed this distance at 75 feet, and later fixed it at 150 feet, and still later at 195 feet.

These changes of opinion destroy, in our judgment, whatever of value the testimony of this witness on this point might otherwise have.

H. T. Prudhomme, a witness for defendant testified:

"Q. What would you say, respecting the speed of that truck, Mr. Prudhomme, as compared to the speed that the street car was making?

"A. Well, the truck was coming along, I would imagine at a rate of twenty miles an hour, or even a little bit more, when it pulled out in front of the street car he seemed to pick up some speed, trying to beat it across.

"Q. Did the truck stop or check its speed before going on the track on which the street car was traveling, Mr. Prudhomme?

"A. It headed towards me, coming across at a terrific rate of speed, trying to get across the street in front of the street car.

"Q. Did he stop before coming over?

"A. No, sir. * * *

"Q. Mr. Prudhomme, the point is, the automobile truck had gotten across, or partly across, or was going across, when the street car hit it?

"A. The automobile got hit, the front wheels were across the rail."

Mrs. Ira Gillespie, a witness for defendant, testified:

"Q. When the truck turned to go across the track, about how far, would you say, the street car was from it, Mrs. Gillespie?

"A. The distance, I presume, from here over to the jury box."

G. N. Rosomond. a witness for defendant, testified that he was the motorman on the street car that collided with the truck on which plaintiff was riding, and that at the time of the accident the headlight and interior lights of the car were burning, and that the speed of the car

just before the accident was about 10 miles an hour.

"Q. Now, about where were you, when you first saw that truck that you afterwards collided with?

"A. Well, I was about fifteen feet in front of it, ten or fifteen feet. The first I knew, he cut in ahead of me. Of course I saw some traffic coming up the street meeting me on the right hand side, the ·proper side of the street. * * *

"Q. Where was it, when it first distinguished itself, first attracted your attention?

"A. It cut out of the line of traffic and headed in front of the street car.

"Q. Which direction did it cut?

"A. It cut to the left, going out Texas avenue.

"Q. Cut, traveling to the left?

"A. Yes, sir.

"Q. How far was the street car from it when he did that?

"A. Ten or fifteen feet.

"Q. What did you do?

"A. I immediately set the brakes and what we call showered down on the gong; I guess you all understand that.

"Q. Rang the gong violently?

"A. Yes, sir.

"Q. Did your brakes take effect?

"A. They did. * * *

"Q. When he started across the track, in front of your car, was there anything that you could have done towards trying to stop that you did not do?

"A. No, sir.

"Q. Was it possible to stop before striking the truck?

"A. No, sir."

O. C. Beasley testified that he was the conductor on the street car that collided with the truck, and that the first intimation he had that a dangerous situation existed was the rigid application of the air brakes to the wheels of the car by the motorman, and that when this happened he loked out to ascertain the cause of the trouble, he saw the truck and it appeared to him to be about six feet in front of the car.

Mrs. Lois Whitt, a witness for defendant, testified that she was standing on the sidewalk near the scene of the collision when it occurred, and that she heard both the whistle and the bell on the street car, that she saw the truck approaching the scene of the accident, and that just before it started to turn across the street it slowed up.

"Q. Was he going slower, as fast, or faster than the street car was going, as he came around and started to make the turn to go over the tracks?

"A. He was going faster. * * *

"Q. About how far was the truck from the street car, when he first started to turn to the left in the truck?

"A. About fifteen feet, I should imagine. * * *

"Q. Where was the street car, when the driver of the truck began to turn to the left, out of line of the traffic?

"A. That is what I mean; about fifteen feet."

J. L. Mathews, a witness for defendant testified that he was standing near the place of the accident, and:

"Q. Mr. Mathews, as you were standing there, did you see the street car before the accident?

"A. Well, I seen two street cars, one going out on the out track and one coming in on the in-bound track; and there were some cars going out, the most of the traffic, as well as I remember, there were three men in a car, two inside and a man on the outside standing on the footboard or looking down, laying down on the man inside, where the accident happened. He was on the line the street car was on, according to my judgment twelve feet, ten or twelve feet, when he made a turn short, in the middle of the block, and, of course, the street car ran into him; no chance to stop. * * *

"Q. What lights did you see?

"A. I seen. the headlight on the head end of the car above the bumper.

"Q. Could you see the lights inside the car?

"A. I did, before the accident. * * *

"Q. When he made the turn to go towards the track, on which the street car was coming, about how far was the street car away at that time?

"A. Well, looked to me like he was not paying any mind to the street car.

"Q. My question was, when he made the turn, to turn to the left, to go on the track, how far away was the street car at that time?

"A. The street car, in my estimation was not over twelve or fifteen feet, I will say not over twenty feet, from where the truck was when it went to turn."

W. J. Coe, a witness for defendant, testified that he was on the sidewalk near the place of the accident when it occurred, and:

"Q. Now, how far back did you see that truck, before he made the turn, as he was going straight out, when you first took notice of it?

"A. Well, I could not say just exactly how far he was when he made the turn; I would judge from the distance, estimate the distance from where I was standing, it was somewhere near fifteen or eighteen feet in front of the car when he turned to the left; I could have varied a little ways, and I could not say, because I was just estimating it; may have been less. * * *

"Q. Did the truck stop before starting across the track?

"A. No, sir.

"Q. How do you know that?

"A. Because I was looking at it. * * *

"Q. After the truck cut across the track, what happened?

"A. Well, there was some one jumped from the truck and ran off, and the street car hit the truck just after it reached the rail, the front wheels, and turned it over on its left side. * * *

"Q. When the truck was struck by the street car, what, if anything, did you see about the speed or the movement of the street car at that particular time; or how far did the street car go, after it struck the truck?

"A. The street car was almost at a standstill when it struck the truck. What attracted my attention so, just before the truck was going along there, and what called my attention was, the car going along there donging the bell now and then and all at once he started ringing like a fire wagon was coming up, and that called my attention, and about that time the crash, they came together.

"Q. What did the truck do, when you first heard this alarm of the gong?

"A. It just started cutting across to the left, across the track.

"Q. At that time, the street car was how far from the truck?

"A. I judge not over eighteen feet."

G. H. Thompson, a witness for defendant, testified that he was in an automobile immediately behind the car in which plaintiff was riding, and that he was driving in the same direction that the truck was going, and:

"Q. Where was the truck, with reference to the car that you were driving?

"A. The truck was in front of me; in front of my car; between my car and the street car; in fact, both meeting the street car some time before the accident occurred. * * *

"Q. Did you hear the street car coming down the street before the accident?

"A. I heard the ringing of the bell or gong.

"Q. Could you tell about where it was when it sounded the gong or bell?

"A. If my memory serves me right, it was immediately before the accident.

"Q. About how fast was the truck going out Texas avenue before it changed its course?

"A. My speedometer registered fifteen miles an hour, and the truck was ahead of me; in fact, the truck passed me.

"Q. After it passed you, was there anything to interrupt your view of the truck from then until the street car struck him? Was there anything to keep you from seeing the truck after it passed you until he was struck?

"A. No, sir.

"Q. Did you see him when he made the left hand turn and started across the street car track?

"A. I did.

"Q. Did he stop before he started across the track?

"A. He did not.

*    *    *

"Q. How soon after he started to make the turn, was it that the street car struck the truck?

"A. Almost immediately.

"Q. Did you see the street car as it came down the street before the accident, see the way it was running?

"A. Yes, sir.

"Q. Did you see the lights of the car?

"A. Yes, sir.

"Q. Was it lighted?

"A. Yes, sir.

"Q. Did you see the headlight on the street car?

"A. Yes, sir.

"Q. Was it lighted?

"A. Yes, sir; it was burning.

"Q. How close ahead of you did he cut over?

"A. Well, you might say that he was right, pretty close to me, as I had to set the brakes on my car to keep from striking him, he turned so abruptly."

The testimony of these witnesses makes it clear that the motorman on the street car was deprived of any opportunity to stop his car before striking the truck by reason of the truck on which plaintiff was riding being driven in front of the street car too close for the latter to be stopped in time to prevent the accident, and that defendant was not liable under the doctrine of the last clear chance.

The doctrine of the last clear chance has no application where the negligence of both parties is concurrent and continuous down to the moment of the accident. Young v. Railroad Co., 153 La. 132, 95 So. 511, 512.

"Even though driver of truck was driving at excessive speed and did not give signal of his approach, contributory negligence of one waiting for street car, in suddenly stepping in front of the truck, held the proximate cause of his death, as driver was deprived of last clear chance of preventing the collision." Collier v. Frank Varino & Co., 153 La. 636, 96 So. 500.

The record very clearly shows that the motorman on defendant's street car was not negligent at all, and that, on the contrary, the sole cause of the collision and consequent injury of plaintiff was the joint negligence of Langford, the driver of the truck on which plaintiff was riding, and plaintiff himself.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff's demands be rejected and his suit dismissed at his cost.