HOGAN v. N. O. PUBLIC SERVICE, INC.

___

(January 5, 1931. Opinion and Decree.)
(February 2, 1931. Rehearing Refused.)
(March 30, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

___

Jules A. Grasser, Weiss, Yarrut & Stich and H. W. & H. M. Robinson, of New Orleans, attorneys for plaintiff, appellant.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. Plaintiff sues for damages for personal injuries sustained by him as the result of a collision on March 8, 1926, between a Studebaker automobile, in which he was riding, and a street car operated by the defendant corporation. The accident occurred on Metairie road, New Orleans, at a point where the tracks of the defendant corporation cross the paved roadway diagonally.

The motorman of the street car of the defendant corporation is said to have been negligent, in that he failed to look before him when crossing the road, and emerged from the right of way of the railway company on the right, into the two-way paved road, much frequented by automobiles, without having his car under control and without sounding his bell or other warning signal prior to his having attempted to cross the highway.

At the time of the accident plaintiff was employed by Dan S. Lehon Detective Agency, a corporation engaged in the business of making investigations, furnishing watchmen, and protecting persons and property. He was one of the occupants of a Studebaker automobile belonging to his employer, the other occupants being Dan S. Lehon, the president of the corporation, Percy Bell; negro chauffeur, Harry O'Brien, W. W. Ward, and W. W. Ward, Jr.

Dan S. Lehon, who was injured in the same accident, was awarded a verdict against this same defendant by a jury in the civil district court in the sum of $17,-247.83. This verdict, however, was set aside by the trial judge, who expressed the view that the contributory negligence of Lehon's chauffeur barred Lehon's recovery, whether the defendant railway company was negligent or not. This court, in reviewing the Lehon judgment, expressed the same view. Lehon v. New Orleans Public Service, Inc., 10 La. App. 715, 123 So. 172. When the present case was tried, the testimony in the Lehon case was, by agreement, read in evidence and, with the exception of some testimony by Hogan and his physician as to the extent of his injuries, makes up the entire record. This case was also tried by a jury, which this time returned a verdict for defendant, which was approved by the trial judge. The jury's action here is said to have been influenced by the charge of the judge on the subject of joint enterprise, which, it is contended, had no application to the facts of this case, and it appears to us that such was the situation. In other words we believe that the jury and the trial judge were of the opinion that the present plaintiff was barred because he was engaged in a joint enterprise. The negligence of defendant, therefore, has not been passed on by any court in either case.

The six passengers in the Studebaker automobile in which plaintiff was riding at the time of the accident were situated as follows: Mr. Lehon was on the front seat with the driver; two of the other

passengers occupied the auxiliary seats in the tonneau; and plaintiff was seated on the rear or back seat on the left-hand side, with one of the other passengers, whose name is unimportant, but very likely Mr. O'Brien. Both Hogan and O'Brien were armed for the purpose of protecting a truck belonging to the Lehon Agency, which preceded the Studebaker by several hundred yards, and in which money was being transported for use at a dog track situated near the scene of the accident. In other words, the truck had gone ahead and the Studebaker was following it at a safe distance to circumvent possible highwaymen.

The argument concerning joint enterprise is based upon the fact that Hogan was the superintendent of the Lehon Detective Agency, Inc. His sway over its affairs being co-extensive with the duties of that office, and, as he rather boastfully puts it in his testimony, "over all the works." We have, therefore, the situation of two officers of the same corporation, one the president and the other the superintendent, albeit the superintendent's duties at the time of the accident would not indicate high executive authority, since he and O'Brien were merely acting as armed guards protecting the treasure chest in the armored truck which was preceding them.

The automobile was in charge of another employee of the company, the negro chauffeur whose name was Percy Bell. It is the contention of defendant's counsel that the superintendent in that situation should have asserted himself and should have given such orders to the driver as would have resulted in an avoidance of the accident.

The mission of the Studebaker automobile is said to have been a joint enterprise participated in by its occupants, at least by Lehon and the other employees of his company, and the negligence of one, in this case the driver, must be imputed to all.

We are referred to Blashfield's Cyclopedia of Automobile Law, vol. 2, page 1149, where, in discussing the nature of the authority of those engaged in joint enterprises, we find it stated that:

"* * * Each must have some voice and right to be heard in the control or management of the undertaking, and the joint enterprise in which the occupants of an automobile must be engaged before the contributory negligence of the driver can be imputed to the passenger must be one whose nature gives the passenger some voice in the control and direction of the vehicle."

The industry of counsel, his experience and skill, has failed to develop any case, and we know of none where an employee of a corporation, in the presence of the president, has been held negligent for failure to assume direction of any enterprise or transaction prosecuted or undertaken in the interest of the company. It seems to us that for Hogan to have attempted to direct the chauffeur of the Studebaker automobile, from the back seat, with Mr. Lehon, the president of the corporation and owner of the automobile, sitting beside the chauffeur on the front seat, would have been presumptuous and insubordinate.

The doctrine of concurrent negligence is thus stated in volume 45, Corpus Juris, page 1019:

"In order that the concurrent negligence of a third person can be interposed to shield another, whose negligence has caused an injury to one who was without fault, the injured person and the one whose negligence contributed to the injury must have sustained such a relation to each other, in respect of the matter then

in progress, that in contemplation of law the negligent act of the third person was the act of the person injured. Or, as sometimes expressed, they must stand in such relation of privity that the maxim, qui facit per alium facit per se, directly applies."

Quoting further from pages 1020, 2021:

"The mere fact that two persons are doing something together does not make each chargeable with the negligence of the other, nor does the fact that they have certain plans in common."

Again on page 1032 we find the following:

"To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance."

In Wagner v. Kloster, 188 Iowa, 174, 175 N. W. 840, 841, cited in the footnotes, supra, we find the following:

"Parties cannot be said to be engaged in a joint venture or common enterprise within the meaning of the law unless there be a community of interest in the objects or purposes of the undertaking, and an equal right in each to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management."

In Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 993, L. R. A. 1917F, 253, we find the following:

"Negligence on the part of the driver of an automobile is not imputable to his guest in the car; nor does one who accepts an invitation to ride in an automobile thereby engage in such a common enterprise or joint venture with the driver that neither would be liable to the other for an act of negligence."

See, also, Daull v. New Orleans Railway & Light Co., 147 La. 1012, 86 So. 477.

"To create the imputation of negligence the passenger must have assumed control and direction of the vehicle. Merely making suggestions as to the route to be taken, or warning the driver of the danger, does not amount to sufficient authority or control." 45 C. J., p. 1034, Negligence.

On this point our conclusion is that plaintiff is not chargeable with the contributory negligence of the chauffeur of the Studebaker automobile.

Plaintiff is also said to have been independently negligent, in that, according to his own testimony, he saw the street car when the automobile was fifteen feet from the track and uttered no word of caution or alarm. With respect to this suggestion we observe that it sufficiently appears from the record that at that time Mr. Lehon, the president of the company, was shouting to the motorman, and, if any warning could have had any effect, it was given.

We now come to the final question in the case, the negligence, vel non, of the defendant street railway company. The fault imputed to the motorman of the street car consists in the alleged fact that he was not sounding his bell as he approached the crossing, which was a dangerous one; that he was not looking ahead of him at the time; that he entered the paved roadway without having his car under control and without taking such precautions as the dangerous crossing required. There is much testimony in the record and many photographs.

Dealing with the question of whether there was or was not an opportunity to observe the street car at an appreciable time before its appearance upon the paved roadway from the defendant's right of way, because of the hedge, brush, and trees which are said to obscure the view of mo-

torists, in our former opinion we found that the hedge along the right of way was only three feet high and not an important obstruction to the view. The writer of this opinion has, since the decision in that case —in fact only a short while before the preparation of this opinion—visited the scene of the accident, and is of the opinion that, as it appears at present, there is little difficulty in seeing an approaching street car from the roadway. But, at the same time, the locality is not a crossing, and the car tracks cross the highway obliquely from right to left without any visible indication other than the presence of the tracks in the roadway to suggest the danger involved. The situation is one which imposes upon the railway company, as well as upon the drivers of vehicles on the highway extraordinary care.

Defendant's motorman claims to have sounded his bell as he approached the highway, and in this he is corroborated by the conductor and by a negro passenger, who was in the car at the time. He was moving at the rate of from five to eight miles per hour and described his entry into the roadway as follows:

"A. Well, I first looked towards New Orleans and then I looked back toward Jefferson Parish side and, when I looked towards New Orleans seeing these automobiles was a sufficient distance from my car to allow me to cross, I continued to move on and looked back towards the Jefferson Parish line and, when I looked that way I didn't see anything to interfere with my crossing. I looked back again to the New Orleans side and that is when I saw this automobile coming."

In another part of his testimony he says that he saw the Studebaker when between eighty and one hundred feet distant, and that he estimated its speed at from forty to fifty miles per hour. Two witnesses, occupants of an automobile which approached the crossing just ahead of the Studebaker, Shillinger and Neilson, both of whom were put upon the stand by the defendant corporation, testified that they heard no gong. All of the other witnesses, with the exception of the negro passenger, the conductor and the motorman, testified to the same effect.

Under the circumstances, particularly since two of the witnesses of defendant are in accord with all of the witnesses of the plaintiff, our conclusion is that the motorman failed to sound his bell or gong.

Both Shillinger and Neilson were disinterested witnesses and had an unusual opportunity for observation. Shillinger, who was very familiar with the crossing, since he passed there three or four times a day, testified that he had narrowly avoided an accident at that point on three or four occasions because of the habit of street cars entering the roadway without sounding their gong.

Neilson testified that the motorman was looking backward as he entered the roadway. In fact, the motorman admits that he was looking back "towards the Jefferson Parish Line."

It is evident that the motorman was not maintaining a proper lookout. Moreover, if he saw the Lehon car approaching very rapidly when eighty or one hundred feet away, as he claims he did, he should have immediately applied his brakes and stopped his car, which he could have done almost instantly at the rate of speed he was maintaining, which was from five to eight miles per hour. He apparently made no effort to stop his car before the accident. We conclude that defendant was guilty of negligence.

The plaintiff sustained a Colle's fracture of the distal end of the radius bone

of the right wrist with upward and backward displacement. His wound was infected, which, together with the necessary splinting and casting, caused him considerable pain. He was unable to use his hand for several months, gradually regaining practically complete and normal function. In addition to the wrist injury he suffered a gash on his left shin and smaller contusions and abrasions. Plaintiff's injuries were painful, but not permanent. We are of the opinion that $1,500 would be an appropriate allowance.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment be reversed, and that there now be judgment in favor of the plaintiff, Clarence V. Hogan, and against the defendant, New Orleans Public Service, Inc., in the sum of $1,500, with legal interest thereon from judicial demand until paid, and with all costs.

JANVIER, J. (dissenting). I disagree with my associates in two particulars: First, I am of the opinion that the record shows that there was no negligence on the part of the motorman of the street car, and, second, I feel that, even if there was negligence on the part of the motorman, the negligence of the 'chauffeur of the automobile in which plaintiff was riding is imputable to plaintiff, the superintendent of the company for which the chauffeur was working at the time, and that, thus, that negligence would bar recovery by plaintiff.

The record convinces me that the motorman operated the street car with all necessary care, and that the collision could not have occurred but for the extraordinary carelessness of the driver of the automobile in which plaintiff was seated.

There is no evidence of extraordinary speed on the part of the street car. In fact, the witnesses state that it was very moderate.

The evidence as to the ringing of the gong is contradictory, but surely it cannot be said that it preponderates towards plaintiff's contention that it was not rung, and on plaintiff rests the burden of proof.

It is said that the motorman of the street car was looking towards his right, instead of towards his left, which is the side from which plaintiff approached. The motorman was required to look in both directions and he could not look in both directions at the same time. He first looked towards the left and saw that the automobile in front of that in which the plaintiff was riding had stopped. He was certainly justified in assuming that those in the rear of the halted car would also stop and would not come dashing around it in an effort to beat the street car to the crossing. Having seen that the traffic from that direction appeared to be stopped, he looked to the right, as he was justified in doing. He was, therefore, not negligent in this particular.

My associates find that in all probability the jury was misled by the charge delivered by the judge below. I see no reason to come to a conclusion that a jury is misled, and believe, on the contrary, that the jury was fully cognizant of the facts as adduced on the witness stand and believed that the motorman was without fault.

But, even if the motorman was at fault, I cannot lose sight of the fact, as we have already found, in Lehon v. New Orleans Public Service, Inc., 10 La. App. 715, 123 So. 172, that the driver of the automobile was grossly at fault, and it appears to me that his negligence is chargeable to

plaintiff here. Plaintiff was the superintendent of the detective agency in the business of which the automobile was being driven at the time. Whether or not he exercised supervision over the driver is unimportant, because he had the right to do so in view of his position, he having stated that he had charge of all outside operations of that agency.

"The negligence of a chauffeur is imputable to his employer or master who is riding with him; and this is true regardless of whether the latter is so situated that he can give directions." Berry, Law of Automobiles (6th Ed.) vol. 1, p. 511, sec. 642.

It is conceded that, had Mr. Lehon, the president of the corporation and the owner of the automobile, not been present at the time then the negligence of the chauffeur would have been imputed to the plaintiff here by reason of his position as superintendent of the agency. I cannot see what difference it makes that Mr. Lehon himself was present. The presence of the president of the corporation did not deprive Hogan of his position or prerogatives as superintendent of all outside operations, and it was his right and prerogative, as such, to warn the chauffeur about his apparent recklessness. If he had this right, then his right to recover is barred by the negligence of the chauffeur. I do not believe that it can be said· that, where an automobile is engaged in carrying out the business of a corporation, the negligence of the driver of the automobile can be imputed only to the highest ranking officer who happens to be present. If there are two or more officers present, and any one of them would have the right to issue instructions or warnings to the chauffeur, then the negligence of the chauffeur is imputable to any one who has that right, whether he exercises it or not.

I respectfully dissent.

JANVIER, J., dissenting from refusal to grant a rehearing.

In dissenting from the refusal to grant a rehearing I depart from an established custom, but I do so because I find that a point raised by defendant and most exhaustively and conclusively presented in the brief was not discussed by me in my dissenting opinion and was scarcely even referred to in the majority opinion.

Defendant contends that, apart from the imputability of the negligence of the chauffeur to the superintendent, Hogan, he, Hogan, was guilty of independent negligence on his own part, and that this negligence should bar his recovery.

That a passenger in an automobile driven by another may be guilty of negligence independent of any fault that may be chargeable to the driver has been intimated often and held directly on several occasions, and we have so decided very recently in the matter of Williams v. Lenfant, 15 La. App. 515, 131 So. 857, No. 13,506 of our docket, decided by us on January 19, 1931. But so greatly does the argument of counsel for defendant impress me that I shall again refer to the jurisprudence on which the contention is based and shall attempt to show that, under the facts presented by the record, that jurisprudence is applicable here. That our courts have decided that the negligence of the driver is not chargeable to an invited guest has often been decided and need not be discussed, but it has never been decided that such a guest cannot be guilty of contributory negligence on his own part so as to bar recovery, but, on the contrary, our Supreme Court and this court have, on many occasions, intimated that he may be guilty of such negligence and that such negligence may defeat his action.

In Churchill v. Texas & Pacific Ry. Co., 151 La. 726, 92 So. 314, 315, the Supreme Court said:

"Granting that Hayslip, the driver of the automobile, was guilty of negligence in approaching the crossing without slackening his speed, and attempting to beat the train across, should this defeat plaintiff's right to recover for the death of his father, who was the guest of Hayslip? Under the jurisprudence of this court, it would not, unless the circumstances were such that the deceased could be charged with negligence of his own. Daull v. New Orleans Railway & Light Co., 147 La. 1012, 86 So. 477, and authorities therein cited. Churchill, not having charge of the operation of the machine, was not required to keep a lookout for danger, but could rely upon the discharge of that duty by the driver, who was responsible for its operation; and it not appearing that the deceased saw the approaching train until almost the instant of the collision, and, having shouted the warning as soon as it was discovered, we do not find that he was guilty of negligence."

In the Churchill case plaintiff was an invited guest passenger in a car driven by his son. In Leopold v. Texas & Pacific Railway Co., 144 La. 1000, 81 So. 602-603, the plaintiff was a guest passenger and his son was the driver. A railroad crossing was approached at a speed of about fifteen miles an hour, which was reduced to about half of that. The car struck a soft spot in the highway and the engine stalled. While the son was cranking it, as it had no starter, plaintiff testified that he looked and saw no train, but that he mentioned to his son that a train was about due and that they started to cross the track; and "that he never looked any more for the approach of a train, for the reason that his attention was attracted to his son's manipulation of the car, as the latter had been away from home several months, and he was afraid the son would not be able to operate it readily." The car went upon the track and was struck by the train. The Supreme Court found that the railroad company was guilty of negligence in that the crossing was in bad condition and in that it had permitted obstructions to grow upon the right of way, and in this regard the court said:

"These conditions placed upon both parties the duty of exercising extreme care at this crossing; and, inasmuch as Dr. Leopold admits that he never looked any more after stopping until the train was almost upon him, we must conclude that he, too, was guilty of negligence."

And later the court said:

"Some effort is made to excuse his failure to look again on account of the condition of the crossing, but the doctor says it was his fear that his son did not remember fully how to operate the car, on account of his absence. Be that as it may, he admits that he knew it was about train time, having mentioned it to his son, and the duty to look out for the train was far more important than the matter mentioned. He was not driving himself, so that he was compelled to have his attention on the car."

We find the doctrine under discussion very well stated in 29 Cyc. 561, as follows:

"Notwithstanding the fact that the negligence of the driver will not be imputed to a passenger, yet it is necessary that the passenger himself must exercise ordinary care. And the rule denying the imputation of the negligence of the driver to the passenger has no application where such passenger has an opportunity to discover the danger, it being his duty in such case to discover and avoid it. While the passenger is not required to exercise the same watchfulness as the driver, he cannot rely implicity on the care of the driver when in a position to see. No recovery can be had where the passenger ac-

quiesced or participated in the negligent acts of the driver, or had knowledge of the danger and accepts the risk to be encountered."

I believe that the Leopold decision is ample authority for the view that plaintiff in the present case cannot recover because in that case Dr. Leopold was fully cognizant of the danger. He was not driving the automobile; therefore his attention was not in any way diverted and he was in better position to see. He realized that some duty rested upon him, for he did look, though he says he did not continue to do so. In the present case Hogan was fully familiar with that crossing. If it was dangerous by reason of obstructions to the view, or because of the peculiar curve made by the street railway tracks, no one knew of these conditions better than did he. In fact he admits that he knew of all these things and goes so far as to say that he, because of his location on the right side of the car, could see better than the chauffeur. On page 90 of his testimony he says: "I could see the car. The chauffeur could not see the car." That he had an unobstructed view is evidenced by his own testimony, as it appears on page 77:

"Q. In what seat of the automobile were you?
"A. I was sitting on the back seat, on the right hand side of the machine looking forward.
"Q. In that seat, could you see and hear freely and unobstructedly?
"A. Absolutely."

That his attention was fixed on the car appears from the evidence given by him as I find it in the record on page 78:

"A. * * * I could see the street car all right, but I wasn't paying no attention to the track. I was watching that car."

That he knew they were approaching the crossing, even before he saw the street car and that he assumed the attitude that it was not his business to have anything to do with the driving of the car appears on page 88 of the testimony:

"Q. But if you know that there is a railroad track there, and had passed over it several times, you don't need a sign to tell you it is there, do you?
"A. Well, personally, I don't suppose I would, but I am not here to vouch for anybody."

Again, that he realized that possibly the driver could not see, but that he could, I find in his testimony on page 92:

"A. Anyone in the back of the car can see it, or on the right hand side of the car, but I am talking about the driver now. I seen that car when it was thirty or forty feet away, between thirty and forty feet away from me, but I had no control over the street car, the street car nor the automobile."

It appears, then, that Hogan was familiar with the crossing; knew long before the car got there that the tracks must be crossed; realized that it was difficult to see a street car approaching; must have realized that the automobile in which he was, was going too fast and was driven recklessly, as we so held in Lehon v. N. O. Public Service, Inc., 10 La. App. 715, 123 So. 172, and yet made no protest and uttered no sound of warning.

If such conduct is not negligence, then I am not familar with the meaning of the word "negligence" and I do not know what the Supreme Court meant when, in the Churchill case, supra, it intimated that a guest passenger might be refused a recovery if "the circumstances were such that the deceased could be charged with negligence of his own."

Bearing in mind that Hogan, the plaintiff, stated that not only could he see as well as the chauffeur, but that, in fact, he could see better than could the chauffeur, and that he was unusually familiar with the crossing, having gone over it many times, I cannot see how it can be held that he was not himself negligent independently of the negligence chargeable to the chauffeur. In Toups v. Morgan's La. & Tex. R. R. & S. S. Co., 4 La. App. 136, in which both a husband and wife sued for damages sustained when the automobile in which they were riding was struck by a train of defendant company, we held that neither could recover because "each of them were recklessly disregardful of the approaching train, and that their negligence in this respect precludes recovery as to either of them." In McQuiston v. Shreveport Rys. Co., 12 La. App. 277, 124 So. 706-711, recovery was denied to McQuiston, a guest passenger in an automobile driven by another person, because the court felt that the guest passenger himself was guilty of negligence in not taking independent precautions on his own part. The court said that the accident was caused by the "joint negligence of Langford, the driver of the truck on which plaintiff was riding, and plaintiff himself."

In Roberts v. Eason, 6 La. App. 703, recovery was denied where the injured party was a guest passenger in an automobile driven by another because of the fact that the injured party had no opportunity to know of the danger and made no protest. That the court was of the opinion that there was a duty in Mrs. Roberts, the passenger in the car, to keep a lookout on her own account and to insist that proper care be exercised in the operation of the automobile, is shown by the following:

"But considering the record admissions of both Mr. and Mrs. Roberts by their own testimony herein quoted, we are constrained to conclude that each of them was recklessly disregardful of their own safety in traveling so rapidly and trailing the car ahead of them so closely and not maintaining a better lookout and that their negligence in these respects precludes recovery by either of them."

Throughout the testimony of Hogan in the case at bar runs his admissions that he knew that they were approaching the crossing, that he knew that it was dangerous, that he knew that he could see better than the chauffeur, and that he knew that the automobile in which he was riding was going very fast.

In Berry on Automobiles, Sixth Edition, vol. 1, p. 532, sec. 655, is found the following:

"A guest or passenger in an automobile should keep a reasonable lookout for danger, if necessary; the degree of care which he is required to exercise depending upon all the attendant circumstances."

In the case at bar the attendant circumstances were as I have already stated; that Hogan had full knowledge of the dangerous crossing and that he admitted that he knew he could see better than could the chauffeur.

Also, in Berry on Automobiles, Sixth Edition, vol. 1, on page 531, is found a discussion of whether or not a guest passenger may read a newspaper, or otherwise allow himself to become oblivious of dangers. The author states that under certain conditions a guest passenger may fulfill his full duty and yet take only very slight precautions on his own part, but that, even under such circumstances, "there arise in the course of the drive conditions which clearly fix on the guest the duty to give warning. Some of these circumstances may be clear and obvious, as, for illustration, an automobile may be so operated as

to attract the attention of a guest even though he be otherwise occupied, as a car driven recklessly, carelessly, or with excessive speed, driving on the wrong side of the road, etc." Here, again, the conditions which fix such duty on the guest are found to exist in this case. It should be remembered that Hogan was looking out; that thus he could see that the automobile in front of him had stopped before crossing the street car tracks, and yet, in spite of Hogan's knowledge that the street car tracks created an extreme hazard, he permitted the driver of the automobile in which he was riding to dash at an excessive speed around the stopped automobile and directly into the path of the street car. He uttered no word of warning.

For these reasons I am of the opinion that, if the doctrine announced in the many cases to which I have referred is correct, and if a guest passenger is under some obligation to take precautions for his own safety and to warn of a danger which he knows is approaching, Hogan's right is defeated by his own negligence.

I believe that a rehearing should be granted because the point which I have just discussed was not adequately considered and I believe that ultimately the judgment based on the verdict of the jury should be affirmed and that plaintiff's suit should be dismissed for the following reasons:

First, because defendant's employes were guilty of no negligence.

Second, because the negligence of the chauffeur should be imputed to the superintendent riding in the car with him; and,

Third, because the superintendent, plaintiff here, was guilty of independent negligence in failing to warn the chauffeur and caution him at a place which he, the superintendent, knew was extremely dangerous.