**ALLEN v. TEXAS & PACIFIC RY. CO.**

No. 13716.

United States Court of Appeals
Fifth Circuit.

April 5, 1952.

Rehearing Denied May 1, 1952.

Rives, Circuit Judge, dissented.

Seth Lewis, Leon S. Haas, Jr., Opelousas, La., for appellant.

Frank H. Peterman, Alexandria, La., for appellee.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is in an action to recover damages for personal injuries sustained by the appellant in a collision of his automobile with appellee's train at a railroad crossing in Opelousas, Louisiana. At the close of the evidence, defendant filed a motion for a directed verdict. The court reserved its ruling on the motion, under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; upon return of the jury's verdict for the plaintiff, the court sustained the motion and entered judgment for the defendant notwithstanding the verdict. The decisive question on appeal is whether the district judge was correct in entering judgment *non obstante veredicto* on the ground of plaintiff's contributory

negligence, which is a complete bar to recovery under the Louisiana law. Lehon v. New Orleans Public Service Ice, Inc., 10 La.App. 715, 123 So. 172, 174; Daricek v. Forrest, La.App., 173 So. 601, 603; Slayter v. Texas & Pacific Railway Co., La.App., 182 So. 343, 346; Matthews v. New Orleans Terminal Co., La.App., 45 So.2d 547, 552.

The accident occurred at 3:40 o'clock A. M., on January 6, 1949, when the plaintiff, driving west on Landry Street, ran his automobile into the engine of appellee's train, which was traveling south, crossing Landry Street. At the point where appellee's tracks cross said street, the width of the street is 50 feet, and the sidewalks on each side are approximately 4½ feet wide. The length of the tracks between the sidewalks is 53 feet, the difference in the length and width of the street being due to the angle at which the tracks cross the street. On the north side of the street, east of the tracks, was a grocery store that blocked the view of any motorist, approaching the track from the east, until he reached a point approximately 30 feet from the first rail. The plaintiff was familiar with the location of the crossing, having gone over it many times. His version of the accident was that he was driving between 20 and 25 miles per hour when he approached the crossing; that within 35 or 40 feet from the crossing he slowed down to about 15 miles per hour, looked to his right and left, and, assuming that his way was clear, accelerated his car toward the tracks; that the locomotive, running at a speed of approximately 6 miles per hour, pulled out in front of him; that he turned to the left, but could not avoid hitting the engine. The evidence shows that plaintiff's automobile hit the engine beneath the cab at a point approximately 28 feet from the front end of the engine, the impact being of sufficient force to break an iron brake, and bend a steel driving rod out of line by two inches.

The location of the collision was the center of the street. The appellee's head brakeman testified that the train stopped approximately four feet from the north sidewalk; that he proceeded to the center of the street, looked in both directions, did not see any traffic approaching, so gave the engineer a come-ahead signal; that, after he gave the signal, he saw an automobile appear over the Southern Pacific tracks to the east (which tracks were later determined to be 1262 feet east of the appellee's tracks); that, after the engine had reached the center of the street, he stepped onto the front of the engine and rode on it across the street; and that the front end of the engine had passed the south border of the street at the time of the collision. The plaintiff testified that he did not see any light from the engine, heard no whistle or bells, and that the grocery store on the north side of the street obstructed his view of the tracks in that direction.

■ We agree with the court below that the accident could not have happened in the manner described by the plaintiff, because his description was in complete conflict with arithmetical computation and physical possibility.[1] Upon consideration

1. Memorandum opinion of the court below: " * * * In order for the cab of the engine to reach the middle of the street, it was necessary for the engine to travel at least 28 feet plus the width of the sidewalk of 4½ feet, plus half the width of the street at 27 feet or a total of approximately 60 feet or more. Plaintiff himself swore that the train was going about 6 miles an hour. He claims he looked to the right and saw nothing and that the front of the train was not at the sidewalk at that time. He was then 30 or 35 feet from the track. The train was going, according to plaintiff, 6 miles per hour; and plaintiff was going, according to his own statement, 15 miles an hour. Nevertheless, he traveled 30 or 35 feet at 15 miles per hour to reach the point of collision, while the train traveled 60 feet or more at 6 miles an hour to reach the same point. To put it in another way, plaintiff was traveling 15 miles an hour, which is equivalent to 22 feet per second; it therefore took him about 1.5 seconds to reach the point of collision from the time he looked to the right. The train was traveling, according to plaintiff, 6 miles per hour, which is 8.8 feet per second. In order for the cab of the engine to reach the center of the street, with the engine starting just north of Landry Street, it would have required about 7

of the entire record, and adopting a view most favorable to the plaintiff, allowing him every fair and reasonable inference that the evidence justifies, we are of the opinion that he did not exercise the precaution required of him by law, and that the lack of ordinary care and prudence on his part was the proximate cause of his injuries.

■ The plaintiff also attempted in the court below to invoke the doctrine of last clear chance; and he asserts that doctrine as ground for reversal on this appeal. In order that this doctrine may be invoked, it must appear that the appellee was aware, or reasonably should have been, that the plaintiff was in a position of peril. There is no evidence in the record to support such a finding. The train crew had the right to assume that the plaintiff would stop short of the track, since the train had already preempted the street prior to his arrival at the crossing. The crewmen were not negligent in failing to anticipate the negligence of the plaintiff. Pollard v. Davis, 5 Cir., 93 F.2d 193; Eggleston v. Louisiana & A. Railway Co., La.App., 192 So. 774; Wright v. Texas & N. O. Ry. Co., La.App., 19 So.2d 894, 897; Levy v. New Orleans & Northeastern Railway Co., 20 So.2d 559, 565; Matthews v. N. O. Terminal Co., 45 So.2d 547, 553; Bordenave v. Texas & N. O. Ry. Co., La.App., 46 So.2d 525, 529; Calvert Fire Insurance Co. v. Texas & Pacific Ry. Co., La.App., 55 So.2d 693.

In our opinion, the court below was correct in entering judgment on the motion for a directed verdict, and the judgment so entered should be affirmed. Southern Railway Co. v. Walters, 284 U.S. 190, 52 S.Ct. 58, 76 L.Ed. 239; Eckenrode v. Pennsylvania R. Co., 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed. 41; Northern Pacific Ry. Co. v. Bacom, 9 Cir., 91 F.2d 173; Great Northern Railroad v. Taulbee, 9 Cir., 92 F.2d 20; Louisiana & Arkansas Ry. Co. v. Jackson, 5 Cir., 95 F.2d 369; Rule 50(b), Federal Rules of Civil Procedure.

Affirmed.

RIVES, Circuit Judge (dissenting).

In compliance with an ordinance of the City of Opelousas, the appellee had a flagman at this railroad crossing. The sole function and duty of that flagman was to protect traffic on the street. He saw the approaching car just after he gave the signal to the engineer to come ahead. He assumed that the car would stop and either turned his back and walked across the street, or got on the pilot of the engine when it reached him and rode across. The fact that automobiles often do not stop was the occasion for requiring this crossing to be flagged in the first place. Under Louisiana law "the doctrine of the last clear chance applies just as effectively against one who should see approaching danger but fails to look for it as it does against one who actually sees it and fails to avoid it." McCormick & Co. v. Cauley, La.App., 168 So. 783, 786.

The Louisiana law on the doctrine of last clear chance was thoroughly reviewed in the case of Eggleston v. Louisiana & A. R. Co., La.App., 192 So. 774, 780 and the rule restated as follows:

"The rule furnished by those authorities is that where a person negligently places himself in a perilous situation and his negligence and peril are actually discovered by the operator of the offending vehicle, or by the use of reasonable care should and could have been discovered, there is then a duty on the part of the operator to save that person from the consequences of the negligent act, if, by the exercise of due diligence, such can be done. If said operator, after the actual or constructive discovery of the existing peril,

seconds. * * * Allen just could not have looked at the time and place he said he did; and the train just could not have been out of his view if he had looked at that time and place. To hold otherwise, we must decide that 1.5 seconds is the same as 7 seconds; that an automobile going 15 miles an hour will take the same time to cover a distance of 30 feet that a train going 6 miles an hour will take to cover a distance of 60 feet." [96 F.Supp. 524.]

548

could have prevented the occurrence of an accident by the exercise of due diligence and failed to do so, such failure constitutes negligence and is considered the proximate and immediate cause of the accident and resulting injury, and the person's negligence the remote cause; and said person may recover, although his negligence continued to the moment of the accident."

A flagman at a railroad crossing is in a different position from the train crew. Oncoming vehicular traffic is peculiarly the subject of his protection and he cannot safely assume that it is in no need of protection. The Louisiana Supreme Court speaking of such a flagman in Roby v. Kansas City Southern R. Co., 130 La. 880, 58 So. 696, 699, said:

"The law expects him to keep on the alert, so as to be able, from the proper place and within the proper time, to give the warning expected of him, and to stop the locomotive and rolling stock or the individual citizen, on foot or in a vehicle, or all of them, as occasion may demand."

Appellant quotes from the opinion of this court in Pollard v. Davis, 5 Cir., 93 F.2d 193, 195:

" 'After the train has reached the crossing, the duty of the gatekeeper or flagman ends as to that train, and such person is not negligent in then leaving the position of duty since the train itself is then sufficient warning.' "

Like other general statements of law, that expression must be taken in the light of the facts and circumstances under which it was made. In the case of Pollard v. Davis, supra, "it was daylight, and the weather clear" and the engine would "give more complete and effective warning than the fireman would have given". In the present case, the collision occurred at night and the angle of the crossing was such that the head-light of the locomotive shone away from the approaching automobile. It seems to me that it was within the province of the jury to find that if the flagman had performed the duty imposed upon him by law

there would have been no collision, and therefore the jury might properly have found for the plaintiff under the doctrine of last clear chance. I therefore respectfully dissent.

Rehearing denied; Rives, C. J., dissents.