SOMMERVILLE, J.
Plaintiff sued for damages to his store and its contents, which were burned on the afternoon of July 6, 1914. He alleged that the loss occurred through the fault and negligence of defendant, which operated a defective planing mill which emitted sparks, and that the sparks set fire to his (plaintiff’s) property. There was judgment for defendant and plaintiff has appealed.
The evidence shows that the defendant company operated a sawmill plant of considerable size at Pickering, Vernon Parish.
Plaintiff alleged that his loss amounted to $6,418.21, and that it was due to defendant’s negligence, in not using a spark arrester on its planer smokestack, in using defective grates in its planer furnace, thereby making.it necessary to use a blower in its smokestack, and that an improper character of fuel was used in firing, such as was highly productive of large sparks and coals of fire, that were blown, out of defendant’s planer smokestack and carried by a high wind to plaintiff’s store building and set it on fire.
Defendant denied that the fire originated from sparks from its smokestack, and denied that it was negligent in any respect. It admitted that there was no spark arrester on its planer smokestack, but denied that this constituted negligence.
[1] The allegation of plaintiff being denied, it is incumbent upon him in order to recover to produce evidence that shows to a legal certainty ’that - his store building caught on fire from sparks emanating from defendant’s planer smokestack, or such proof as would preclude any other reasonable .conclusion than that fire originated from that source. The evidence shows that the wind was blowing considerably at the time of the fire, but there is some conflict in the evidence as to the direction in which it was blowing. The trial court concluded from the evidence that the main direction of the wind was from the northeast towards the southwest; that is, from the-direction of the planer smokestack towards the store building of the plaintiff. Doubtless, as is very frequently true, the wind shifted its direction temporarily at times during the fire.
[2, 3] There were two fires burning at the same time. The first house discovered on fire was that of Ferguson, which was a very short distance from plaintiff’s house. The evidence is somewhat conflicting as to how far advanced the fire was on the Ferguson building before the plaintiff’s building caught. The court is of the opinion that the fire on the Ferguson building was considerably advanced before the Higdon building caught. The evidence shows that, after the fire was discovered on the Ferguson building, there was considerable stir and excitement. The gun was fired, the money was taken care of in the Higdon building, some parties started off to get the hose in shape for fighting the fire. Then it was discovered that plaintiff’s building was also on fire. Some of the witnesses say that the fire in the Ferguson, building I was so far advanced that the building was *507 falling in before the I-Iigdon building was observed to be on fire.
No one saw any spark flying from defendant’s planer smokestack on the day of the fire. The material burned was very thin short shavings produced by the planer mill. They were doubtless consumed as quickly as they were ignited, and did not make sparks of any great size, which might be carried an appreciable distance. The smokestack was 272 feet or some 90 yards from plaintiff’s store, and it was shown that Ferguson’s store was on fire before plaintiff’s was discovered to be on fire. Since it is not charged that Ferguson’s store caught on fire from the smokestack at the defendant’s planer mill, the presumption is that the fire originated from the inside of the building. Then, since Ferguson’s building was much closer to plaintiff’s store than was defendant’s smokestack, in view of the conflicting evidence, it appears more likely to the court that the plaintiff’s store was set on fire from sparks flying from the burning Ferguson building. It is no unusual thing for the wind to shift from its general direction and blow strong gusts in a different direction. It does not matter to the court on which side the Higdon building first caught fire; it would have been much easier for it to have been set on fire from the fire in the Ferguson building than from sparks from defendant’s planer smokestack.
[4] Plaintiff alleged that it was negligence for defendant not to have a spark arrester on the top of its planer smokestack, which allegation defendant denied. This smokestack is 98% feet high from the top of the boilers, and 110 feet high from the ground. The evidence shows that it was not customary among sawmill people to place spark arresters on smokestacks of this height. The law with reference to smokestacks on locomotives having spark arresters has no application to smokestacks of stationary form, where they are built and operated and maintained according' to the most approved custom among people engaged in the same business. In the present case, the defendant company and the insurance companies who carried its insurance were the parties with the greatest interest at stake. The defendant company doubtless had much valuable property in closer proximity to this smokestack than was the plaintiff’s store. From its own experience, and the experience of those familiar with the sawmill business in its employ, the planer smokestack was regarded as safe, from a fire standpoint, without any spark arrester on it. Smokestacks of this height without spark arresters, it appears from the evidence, are in common use all over the country where there are sawmills, and they are everywhere regarded as safe as regards the setting of fire, and are everywhere accepted as such by the insurance companies. In the case of Travis v. K. C. S. Ry. Co., 121 La. 885, 46 South. 909, it is said:
“Railroads -which use appliances of a kind in common use are not guilty of negligence. The rule is that, where the employer does what is commonly and generally done by persons or corporations in the same general line of business, he is not guilty of actionable negligence.”
While the court was in that case discussing the question as to whether or not a railroad company is bound to light its yards by electricity, the principle there laid down seems to be clearly applicable here.
The court has reached the conclusion from the evidence that plaintiff has not shown to a sufficient legal certainty that the fire that destroyed plaintiff’s property originated from sparks from defendant’s planer smokestack.
The judgment appealed from is affirmed.
O’NIELL, J., dissents.