## MARTIN v. ZATARAIN

(March 12th, 1928. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Automobiles—Par. 7.**
   A girl twenty years old is not guilty of contributory negligence, when she stops three or four feet off the neutral ground to let a truck pass, which was coming in the middle of a thirty-foot roadway about twenty miles per hour about forty feet distant from her.

2. **Louisiana Digest — Automobiles — Par. 4 c, 9.**
   The driver of an automobile about twenty or thirty feet behind the truck, who had seen the girl when he was forty or fifty feet from the corner, was negligent in striking the girl, and a judgment for twenty-five hundred dollars for plaintiff will be affirmed, when evidence shows she was in the hospital two and one-half months, and must wear a plate in the broken bone all the rest of her life, with one leg three-fourths of an inch shorter than the other, and walk with a limp.

Appeal from Civil District Court, Division "B". Hon. Mark M. Boatner, Judge.

Action by Robert Martin et al. against John Zatarain.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

James G. Schillin, of New Orleans, attorney for plaintiff, appellee.

A. A. Moreno, of New Orleans, attorney for defendant, appellant.

JONES, J. This is a suit by Robert Martin and his wife, on behalf of their daughter, Leathy Martin, against John E. Zatarain for ten thousand ($10,000) dollars, for injuries sustained by her on July 11th, 1925, when she was struck by an automobile of the defendant. There was judgment in favor of the plaintiff for twenty-five hundred ($2500) dollars, from which defendant has appealed.

The petition alleged that on July 11th, 1925, about 11:30 A. M., Leathy Martin was crossing Howard street at the intersection on the uptown pathway of Washington Avenue, going in the direction of the woods; that Howard street is divided by a neutral ground, on each side of which there are roadways about thirty feet wide; that plaintiff had already crossed the neutral ground, which is about twenty-five feet wide, and had taken two or three steps into the uptown right-of-way of Howard street and had come to a complete stop to permit an automobile truck going uptown to pass; the defendant, who was driving his automobile uptown at an unlawful rate of speed, could not stop when the truck in front of him stopped, and therefore swerved his automobile suddenly to the left, struck the plaintiff and dragged her for about fifty feet from the intersection of Washington Avenue; that as a result of the accident petitioners' daughter suffered a fracture of the lower third of the femur or thigh bone. Petitioners claimed damages in the sum of five thousand ($5000.00) dollars for pain and suffering and five thousand ($5000.00) dollars for permanent impairment of the right leg.

Defendant admitted that he was proceeding up Howard street behind the truck as alleged, but denied that he was going at an unlawful rate of speed, and further averred that the accident was due solely to the fault of the injured girl, who suddenly stepped from a safe place on the neutral ground in front of the approaching automobile of the defendant, in such close proximity that it was impossible for the defendant to stop in time to avoid striking her. Defendant further averred that if she had looked she would have seen the automobile, and, in the alternative, that, if she did look and see the automobile of the defendant, she was negligent in attempting to cross its pathway.

The first witness for the plaintiff, Mitchell Jackson, forty-two years old, who had been a letter carrier for eight years, testified that, at the time of the accident, he had left his wagon on the river side roadway of the neutral ground, and had crossed the street to go to the lake side of Howard street, for the purpose of making a delivery, and was standing on the pavement, "about a couple of feet on the neutral ground". He says:

"At that time I saw coming a paper truck; I can't say whether it was an Item truck or a States truck; and they were coming out at a heavy rate of speed. The truck was behind and when the truck got to Washington street, in between the two corners, it came to a sudden stop. Of course, it had to deliver papers at the drug store. At the time they came to a stop Mr. Zatarain was coming behind the truck, and to avoid running into the paper truck Mr. Zatarain swerved to avoid running into the paper truck, and this young lady was standing two or three feet off the neutral ground and Mr. Zatarain swerved; and this young lady being two or three feet off the neutral ground, Mr. Zatarain struck her, and what saved the young lady was she fell between the fender and the radiator and Mr. Zatarain dragged her seventy or eighty feet, and Mr. Zatarain was so excited his first word was 'Who seen it? Who seen it? She is in the wrong.' At that time there was no one there that gave Mr. Zatarain their name. I was there."

The witness further states that the driver of the newspaper truck (which he says was proceeding up Howard street ahead of the automobile of Mr. Zatarain) put on his emergency brake when its rear was five feet past the property line of Washington Avenue and stopped with rear six or seven feet off property line of Washington Avenue. Zatarain's car stopped toward the neutral ground. The day was clear, streets dry and Zatarain swerved toward the neutral ground.

On cross-examination, he testified that he was about fifty or sixty feet from the corner when he reached the curbing on the neutral ground and at that time the truck was between Fourth street and Washington Avenue, and it might be that it had just left Washington Avenue. He says that he stopped three or four feet in the roadway in order to give the truck plenty of room to pass, because the Item or States trucks are always speeding; he "had had a contact with a paper truck already"; the truck was coming one hundred feet away from her about four or five feet from the sidewalk curb, when she was standing in the roadway; does not know at what speed the truck was going, but these paper trucks always speed and go thirty-five to forty-five miles per hour in the business section, and it might have been going that fast on the day of the accident; roadway is thirty-five feet wide and defendant's car was right behind the truck; the truck began to stop between the upper and lower property line of Washington Avenue, which is forty feet wide, and put on his emergency brake; that he does not know how far the automobile of Zatarain was behind the paper truck, but he swerved nearly to the neutral ground.

The injured girl, Leathy Martin, testifies that she was twenty years old; that she had left the lake side curb of the neutral ground in crossing the uptown roadway of Howard on the uptown pedestrian path of the Washington intersection and had made two or three footsteps into the road when she stopped to wait for the truck and the automobile coming behind to pass, which were then between Washington Avenue and Fourth street, and which appeared to be coming about thirty-five miles an hour, both near sidewalk curb; the defendant's automobile was three or four automobile spaces, that is forty feet, behind the Item truck; the Item truck stopped in front of the drug store, its rear end about five feet above Washington Avenue; she was treated at the Charity Hospital for a broken leg where she remained for ten weeks; she was required to use two crutches for two months after leaving the Hospital; she wore a brace from the time she was discharged from bed; and at the date of the trial, which was approximately eight months after the accident, she was using a brace.

John E. Zatarain, defendant, testified, on the day of the accident, he was driving near the curb of the neutral ground on the lake side of the street about eighteen or twenty miles per hour, when he first saw the plaintiff, she was standing on the uptown lake curb and "she appeared to stop". As he neared her, "she stopped directly in front of my machine and she first appeared as if waiting for me to pass"; he was about eight feet away when she stepped out of the neutral ground into the roadway and, as quickly as possible, he applied his brakes, but, notwithstanding everything he could do, it was impossible for him to avoid striking her; there was no automobile proceeding up the street in front of him, but an ice cream wagon was standing in front of the drug store on uptown lake corner.

On cross-examination, he says that he was about thirty or forty feet away when he saw her standing in the neutral ground, she appeared to be standing still and he did not blow his horn; he had not seen her while she was on the river side of the neutral ground, because there was no occasion for him to look for people on that side of the roadway; if she had looked, she would have been bound to see him, as there was nothing to obstruct her vision, but, notwithstanding, she stepped off the curb directly in front of his automobile about four feet into the roadway, so close it was impossible for him to avoid striking her, notwithstanding he applied his brakes as quickly as possible.

James Arnold, seventeen years old, says he was cranking his big white Item truck in front of the drug store, about twenty feet from the corner, when accident happened; didn't see defendant's car or the girl until it struck her and didn't hear him blow his horn, but knows he was coming pretty fast.

Matthew Lewis, an employee of the Liberty Industrial Life Insurance Company, who at the time of trial had been arrested for murdering his brother-in-law, was standing on uptown river corner of Washington and Howard, across Howard street from the girl, on the neutral ground, says: "She was looking in this direction and just as she finished looking she stepped off, the gentleman blowed his horn and applied the brakes almost about the same time and the Item truck drove to Flach's drug store"; defendant's car, which was three lengths behind the Item truck, was in the middle of the intersection, when she stepped from the neutral ground.

On cross-examination he swears again that he positively heard defendant blow his horn; Item truck was going pretty fast, about eighteen or twenty miles per hour, in the middle of roadway, and defendant's car was behind it; truck cut into the right and suddenly came to a stop about eight or nine feet beyond property line on Washington Avenue; defendant, who was going about eighteen or twenty miles per hour, cut to the left. Truck stopped so close to the curb of Howard that he jumped back to keep from getting hit.

It is thus seen that the testimony of defendant to the effect that there was no truck in front of him contradicts his sworn answer and that of all the other witnesses.

Defendant's able attorney while admitting this contends that the facts must be found from the evidence considered as a whole.

We accept this contention, but we think that the preponderance of the evidence shows that plaintiff, who had started across the uptown roadway of Howard street, stopped about three or four feet from the neutral ground to let the Item truck and defendant's automobile pass, that the defendant, who was driving at least fifteen or twenty feet behind the truck, suddenly turned his car to the left to avoid striking the truck, which had turned to the right and put on the brakes to stop in front of the drug store.

In thus swerving to the left and striking the girl, whom he had seen at least forty feet away, the defendant drove negligently. The evidence shows that Washington Avenue at that point is forty feet wide and the uptown roadway of Howard street is thirty feet wide. If the truck, which had been coming in the center of

the Howard roadway, turned suddenly to the right and stopped close to the curb of Howard street, and the girl was only three or four feet off the neutral ground, there was space enough for defendant to pass, if he had been driving carefully.

We believe that Lewis was mistaken when he says defendant sounded his horn, as he approached the intersection of these two busy thoroughfares, because defendant and all of the other witnesses deny any such action on his part.

We do not base this conclusion on the ruling of this court in Henican vs. Woolman, 1 La. App. 281, to the effect that a chauffeur must so regulate his distance as not to collide with a car in front of him in case the latter comes to a stop. That rule is subject to modifications. See Testard vs. Board of Commissioners for the Port of New Orleans, No. 10,213, decided February 12th, 1928.

As to the contributory negligence of the girl in standing on the roadway three or four feet from the neutral ground, and as to quantum, we approve the finding of the trial judge, which reads as follows:

"It is argued for the defendant that the plaintiff's daughter was herself at fault, because she did not wait on the curb of the neutral ground, where she would have been safe, and because, as she stepped into the roadway, or while she stood there, just before the accident, her head and gaze were turned to her left, away from the direction of the defendant's approach. The defendant's counsel are wrong in supposing that the traffic ordinance forbids pedestrians to stand in roadways at intersections, the language in their brief being taken, inadvertently, from an older ordinance, and having been omitted from the one in effect at the time of the accident. Of course, pedestrians have the right to cross roadways at intersections, and nothing forbids them, indeed prudence may require them to halt momentarily to permit the passage of vehicles, the drivers of which will not halt to permit the passage of the pedestrians. The behavior of this girl was the same as that of many thousands who daily must consider how they may without injury accomplish the crossing of our city streets; and who generally succeed in doing so. One who does what is commonly and safely done by persons similarly situated is not chargeable with negligence. Higdon vs. Pickering Lumber Co., 148 La. 504, 87 So. 252.

"Some of the defendant's witnesses say that Leathy's head was turned away when she was struck. But she had looked in the other direction as she approached the crossing, and had seen the truck and the defendant's car. Having stopped in such position that, if the drivers of those vehicles had behaved with ordinary prudence, she was safe, the purpose of looking in their direction was served, and she was free to looking around to the other side, where also danger might lurk.

"It seems to me that the plea of contributory negligence must fail.

"Leathy's right thigh bone was broken and fragmented. An effort was made at the Charity Hospital, to which she was immediately taken, to treat the fracture with splints and by keeping the leg under tension with weights. After two weeks it was found that the position of the fragments was bad, and then an operation was performed, which consisted in cutting down to and exposing the bone, putting the fragments—or all of them but one—in place, and securing them and the ends of the thigh bone with a metal plate fastened with screws, after which the leg was encased in plaster. Two months and a half after the accident the girl was discharged from the hospital, but was required to wear a brace to keep her weight off the injured leg. At the time of the trial she was still using the brace, and Dr. King thinks she should continue to do so for a year after the operation.

"Her damages are thus seen to be substantial. Her suffering immediately following the accident was severe, and it was renewed when she had to submit to the operation which I have described. Her leg is permanently shortened, and it is somewhat bowed. She will always limp.

She is a comely, shapely girl, and this deformity will always distress her. I fix the damages at $2500.00, and there should be judgment for the plaintiffs for the use of their daughter for that amount, with legal interest from judicial demand and costs."

For above reasons the judgment is affirmed.