No. 743

First Circuit

SCOTTISH UNION AND NATIONAL INS. CO. v. THE BAIST LUMBER & SHINGLE COMPANY, INC.

(March 3, 1931. Opinion and Decree.)
(May 5, 1931. Rehearing Refused.)
(June 22, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

J. C. Hollingsworth, of New Orleans, and Laycock, Borron & Laycock, of Baton Rouge, attorneys for plaintiff, appellant.

Schwing, Morrison, Schwing & Obier, of Plaquemine, attorneys for defendant, appellee.

MOUTON, J. This appeal is taken from a judgment rejecting the demand of plaintiff for $1,000, alleged value of a dwelling house, property of George A. Banta, Jr., destroyed by fire ignited by sparks alleged to have been emitted from the smokestack of defendant company's sawmill.

The building caught on fire in the evening of October 11, 1924, about 7:30 or 8 o'clock. The fire alarm was sounded and many persons rushed to the scene. Several witnesses for plaintiff testify that they ran towards the building immediately and saw fire blazing on the roof. Not one of these witnesses said, however, that they saw the roof set on fire by sparks falling from the smokestack of defendant's mill. The weather was extremely dry at the time, and evidently they merely inferred that the sparks from the smokestack had ignited the roof. These witnesses said that previous to the fire, and on the same evening, they had noticed the falling of sparks from the smokestack which gave color to their impression about the origin of the fire. On the other hand, several witnesses for defendant company, some of whom got to the building a minute or two after the fire alarm, say that they saw no fire on the roof; that when they first saw it, the flames were coming from the inside of the house, shooting upwards through the roof. A lady, whose dwelling was about ten feet from the building says when she first saw the fire it was blazing from the kitchen. No witness, however, for either plaintiff or defendant could testify as to the origin of the fire. There is therefore no testimony from these witnesses to support the averment of plaintiff company that the building was set on fire by sparks emitted from the smokestack of defendant's mill.

It is alleged in the petition that the

smokestack was not equipped with a spark arrester or device to prevent the escape of sparks or live coals from the smokestack. This was really the alleged cause of negligence on the part of defendant company upon which was based the ground of complaint.

The defendant's mill was erected and put in operation in July, 1923. It is shown that the smokestack was equipped with a, spark arrester when the mill was built. This equipment it is shown, was attached to the smokestack under the instructions of Mr. Shuman, at the time inspector for the Louisiana Fire Insurance Bureau. It also appears from the evidence that this spark arrester was in good condition when the fire occurred in October, 1924, and had remained as installed without change or modification.

The proof shows that on the day of the fire, Saturday, October 11, 1924, the mill, as usual, had closed at about 5 o'clock. When the mill closed, it is shown, there was a little fire under one of the boilers and none under the other two. The force draft had been cut off and there was nothing left but a banked fire under the boilers. Under such circumstances, it is proved by Mr. Baist, president of defendant company, the watchman who was left at the mill the evening of the fire and by others, that no sparks or live coals could go through the arrester at the top of the smokestack which was at an elevation of about one hundred feet from the ground. The testimony of Mr. Baist and the other witnesses, above referred to, has not been contradicted.

The testimony of plaintiff's witnesses, above alluded to, could only raise a presumption of fact that the fire was caused by sparks emitted from the smokestack of the mill, but as was said in Edrington

v. Louisville, N. O. & T. R. Co., 41 La. Ann. 96, 6 So. 19, 21, we think that the testimony of defendant "has effectually repelled that presumption by establishing quite the reverse, namely, the taking of all required precautions and the physical improbability of the occurrence, under the circumstances charged." To the same effect are the decisions in Higdon v. W. R. Pickering Lumber Co., 148 La. 504. 87 So. 252; Laurel Hill Gin & Mfg. Co. v. Yazoo & M. V. R. Co., 149 La. 224, 88 So. 801.

We find that plaintiff has failed to prove its demand with legal certainty, and that there is no ground to warrant a reversal of the judgment rejecting the claim.