## BATTALORA et al. v. CARNAHAN CREAMERY et al.*
### No. 14920.

Court of Appeal of Louisiana. Orleans.
Nov. 26, 1934.

Porteous, Johnson & Humphrey, of New Orleans, for appellants Frank E. Carnahan and Standard Surety & Casualty Co. of New York.

Spearing & McClendon, of New Orleans, for appellants Mr. and Mrs. J. E. Salathe and United States Fidelity & Guaranty Co.

H. W. & H. M. Robinson, of New Orleans, for appellees Mr. and Mrs. Chas. G. Battalora.

JANVIER, Judge.

Mrs. Charles G. Battalora, Jr., was a guest passenger in a Packard automobile belonging to John E. Salathe when that car, while operated by Mrs. Salathe, came into collision with a Chevrolet truck owned by Frank G. Carnahan and operated by an employee, Alex Ellzey, who, at the time, was admittedly acting within the scope of his employment. The collision occurred shortly before 5 o'clock in the afternoon on April 18, 1933, at the corner of Octavia and Freret streets. The weather was clear.

Mrs. Battalora was injured and she seeks solidary judgment against John E. Salathe, the owner of the Packard, Mrs. Salathe, who was driving it, Frank G. Carnahan, the owner of the Chevrolet truck, the Standard Surety & Casualty Company, Carnahan's insurer, and United States Fidelity & Guaranty Company, the insurer of Salathe.

Mr. Battalora, for the expenses incurred by the community existing between himself and Mrs. Battalora, also seeks solidary judgment against all the said defendants.

In the district court there was judgment in favor of Mrs. Battalora solidarily against all defendants in the sum of $2,000, with interest from judicial demand, and there was a separate judgment in favor of Mr. Battalora and against all the defendants solidarily in the sum of $313.85. All defendants have appealed.

Octavia and Freret streets cross at right angles. Both are paved. Octavia street is

*Rehearing denied January 7, 1935.

a one-way street, traffic therein being limited to that proceeding toward Lake Pontchartrain. On Freret street there are two street car tracks. Traffic on it is permitted in both directions.

The Packard, driven by Mrs. Salathe and in which Mrs. Battalora and other ladies were guest passengers, was on Octavia street going in the proper direction and it was Mrs. Salathe's purpose to cross Freret street. The Carnahan truck was proceeding up Freret street. Thus, it approached the Packard from the right-hand side of the latter vehicle.

It is charged that the accident resulted from the joint negligence of Mrs. Salathe and of Ellzey, the driver of the Chevrolet truck. Mrs. Salathe is said to have been negligent, in that she entered the intersection at a speed in excess of that permitted by the traffic ordinance of the city of New Orleans, No. 13702 C. S. S., and by paragraph (a), Rule 17 of the provisions of Act No. 21 of 1932 (section 3), and also because she drove into the path of the oncoming truck when the latter was so near at hand that it was manifestly dangerous to do so, and it is also asserted that, had she been alert, she could have avoided the crash even after the danger thereof became imminent, by swerving either to the right or to the left.

The driver of the truck is charged with having committed the following acts of negligence: Driving the said truck at a speed in excess of 40 miles per hour, in violation of the said traffic ordinance; approaching Octavia street, a paved and much used thoroughfare, without having his car under control; failing to notice the Packard as it emerged into the intersection ahead; failing to swerve his truck to the left, so that it might pass around the rear of the Packard; failing to apply the brakes of the truck, which it is alleged he could have done had he been sufficiently observant.

Mr. and Mrs. Salathe and their insurer maintain that the entire fault for the accident rests upon the driver of the truck, whereas Carnahan and his insurer, on the other hand, declare that it was the negligence of Mrs. Salathe which was the sole cause of the occurrence.

█ In the evidence of each group of defendants we find an attempt to show that the other driver had the last clear chance to avoid the crash, and we deem it advisable at this point to call attention to the fact that where two or more defendants are charged with joint negligence, no one of them can be heard to assert that one or more of the others had the last clear chance to avoid the catastrophe.

"The doctrine of the last clear chance has no application as between joint tort-feasors. * * *" Bethancourt v. Bayhi (La. App.) 141 So. 111, 113.

See, also, Cazeaux v. N. O. Public Service, Inc., 16 La. App. 541, 134 So. 121; Shield v. F. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L. R. A. (N. S.) 1080.

Thus, no defendant can escape liability by showing that the driver of the other car was at fault, or could have avoided the accident. To avoid liability either group of defendants must show an absence of negligence on the part of the driver in whom that group is interested, or must show, if that driver was negligent, that between that negligence and the accident there was no causal connection whatsoever.

█ We first consider the evidence concerning the driver of the Chevrolet, and we find physical facts which speak more vehemently than could any words of witnesses. There is no doubt whatever that the truck, which, we may mention, was not loaded and which weighed about two thousand pounds, struck the side of the heavy Packard weighing nearly four thousand pounds, and that the force of the blow was so great that the heavy vehicle was pivoted around and knocked so far upon the sidewalk that only one wheel—the left front—remained upon the pavement of Octavia street. In fact, the blow was so severe that after the crash the Packard was found to have been pushed sideways across the remaining portion of Octavia street and that then its left rear wheel struck the curb so violently that the wheel was demolished, and that even that did not stop the sidewise motion of the Packard, which continued on its unnatural course until the rear almost arrived at the front steps of the house on the upper lake corner of the intersection. The skid marks in the street also showed that the Carnahan truck arrived at the intersection at a grossly excessive speed.

There is, it is true, certain testimony by which counsel for Carnahan and his insurer sought to show that the Packard was not knocked around into almost the opposite direction from that into which it had been previously going, but we experience no difficulty in concluding that those witnesses who so testified were confused in their respective recollections. Mrs. Sullivan, a witness who had been walking along Freret street, was plainly in error in her version of the accident. Her memory was manifestly at fault.

She testified that the truck had been going so slowly that it had barely outdistanced her in traversing a space of some 150 feet, although she was walking at the time. Burton, the young school boy who apparently witnessed the accident, was much confused as to the location of the vehicles after the accident. On these two witnesses the defendant, Carnahan, placed much reliance, but we are unable to do so.

The point of the impact was on the lake side of Freret street, so that the Packard had almost completely crossed the intersection when it was struck. The injury to the Packard was on the right side entirely, no damage having been sustained closer to the front than at the rear end of the front fender. Therefore, if it be conceded that the truck was entitled to the right of way because of the fact that it was approaching the Packard from the right hand side of the latter, we are well convinced that the driver of the Chevrolet was grossly at fault in the matter of speed and that this speed contributed largely to the unfortunate result. In concluding that the speed of the truck was excessive, we follow the reasoning which, in other cases, has elicited such language as that found in Giardina v. Massaro et al., 3 La. App. 221, in which is found a syllabus reading as follows:

"Where a Ford automobile collides with another Ford automobile at a street crossing and after the impact jumps the curbing, proceeds along the sidewalk, knocking a door of a grocery store off the hinges, injuring a pedestrian, and is finally brought to rest by steps on the sidewalk, the circumstances are so persuasive of excessive speed as to require strong proof to establish the contrary."

As the Packard driven by Mrs. Salathe approached the intersection, there was on her right side, and plainly visible, a sign located on the sidewalk bearing the word "Slow." In article 1 of the traffic ordinance referred to (13702) we find the following:

"Slow. Wherever the word 'Slow' appears in this ordinance or on any official traffic sign it shall be mandatory that the speed of a vehicle shall not exceed eight miles."

The evidence submitted on behalf of Mr. and Mrs. Salathe and of their insurer shows that, as the Packard entered the intersection, its rate of speed was 20 or 25 miles per hour, though it is contended that it had slowed down considerably when it reached a point opposite the said sign, and it is argued that, although a speed of eight miles per hour is required by the ordinance at a point immedi-

ately adjacent to the sign, vehicles crossing are not required to maintain so slow a speed after the sign is passed and during the crossing of the actual intersection.

We feel that this is a reasonable interpretation of the requirement of the ordinance if the ordinance is not, as a matter of fact, superseded and made nonoperative by paragraph (a), Rule 17 of the provisions of Act No. 21 of 1932 (section 3), which reads as follows:

"It shall be the duty and obligation of every person owning, driving, operating, or causing or permitting a vehicle to be so driven or operated, when approaching at grade a crossing of a public street, road or highway with any steam, electric, street, interurban or other railroad or tramway, operated upon fixed rails or permanent track, to, upon his own responsibility, bring such vehicle to a full and complete stop at such a place, in such a manner and for a sufficient period of time to enable the driver or operator thereof to observe the approach of trains or cars thereon, by looking up and down said track in both directions and by listening therefor, and before proceeding thereon or there over. In the event it is impossible so to do, then such persons shall proceed only with the greatest caution and at their peril."

Assuming for the moment, however, that the ordinance is applicable, apparently the purpose of its framers was to require that vehicles, on reaching such a sign, should be moving at a speed sufficiently slow to permit of their being immediately stopped upon the first manifestation of danger, and we believe that it would defeat the very purpose of the ordinance to interpret it as requiring that such an intersection should be traversed from one side to the other at so slow a speed. Obviously it is much safer for a vehicle situated as was the Packard to proceed at a greater speed across such a crossing as soon as its driver has made certain that there is no approaching vehicle sufficiently near to create a hazard.

But it is obvious that Mrs. Salathe not only did not decrease the speed of the Packard to eight miles per hour as it passed the point opposite the sign, but that she failed completely to discover the approaching Chevrolet truck, although it would have manifested itself to her had she looked into the direction from which it was speeding towards her. At her left there was an open square of ground across which she could see up Freret street a distance of several hundred feet. She could

have looked into that direction when she was still many feet from the corner and could after that have directed her entire attention to the other and much more dangerous direction. Although on her right there was a certain amount of shrubbery and although along Freret street there were a few trees, the photographs and other evidence show clearly that she could easily have seen the approaching truck had she looked. Then, too, if she could not see because of obstructions, all the more was it her duty to moderate her speed and to stop, if necessary, in order to make certain that no approaching vehicle was dangerously near.

It is true that it has been held that one who intends driving his vehicle across an intersecting street need not anticipate that drivers of vehicles on the intersecting street will approach at a greatly excessive and dangerous speed. See Bethancourt v. Bayhi (La. App.) 141 So. 111; Fisher v. Levin, 16 La. App. 367, 134 So. 439; Richney v. Brasher, 7 La. App. 506. But the doctrine announced in those cases has no application when the vehicle which crosses ahead of the on-coming one is itself being operated at such a speed as to indicate that its driver entered the intersection without taking precautions to ascertain whether there was danger and at a time when it was too late for it to successfully cross in front of the other vehicle, or for the other vehicle to be brought to a stop.

In Bethancourt v. Bayhi, supra, we found that the car which was struck was "crossing slowly." Such a situation is essentially different from that which we find here, for it is quite obvious that Mrs. Salathe was oblivious of the approaching Chevrolet and that she entered the intersection at a speed much in excess of that permitted by the ordinance and drove directly into the path of the said Chevrolet when the latter, because of its own excessive speed, could no longer be stopped in time to avoid a crash.

The view which we take makes it unnecessary that we consider the very interesting question of whether rule 17 (a) of Act No. 21 of 1932 (section 3), renders the ordinance ineffective and requires a full stop instead of merely a reduction of speed to eight miles per hour, as provided for in the ordinance.

We believe that both drivers were at fault, that the negligence of each contributed to the unfortunate result, and that, therefore, all defendants are solidarily liable.

So far as the judgment in favor of Mr. Battalora is concerned, there is no controversy over the amount. The evidence shows an expenditure of, or a liability for $313.85.

■ Mrs. Battalora's injuries were quite severe. She sustained fractures of the ascending and descending ramus of the right pubis, which we understand to be a portion of the pelvic bone. She remained in Mercy Hospital for three weeks and at the end of four weeks was able to use crutches and to move around slowly. There has since developed evidence of arthritis in the right sacroiliac joint. The fracture was a complete one, but apparently had knit with only very slight displacement. She received many cuts and bruises and apparently has not entirely recovered at the present time. There is some doubt as to whether or not the arthritis resulted from the injury. She was nearly 54 years of age. We believe that the amount awarded is not sufficient and that the judgment in her favor should be increased to $3,000.

■ That Mr. Salathe is liable under the circumstances seems to be well settled. In Tarleton-Gaspard v. Malochee (La. App.) 133 So. 409, 413, is found the following:

"Passing to the question of the liability of Leo B. Bisso, we observe that the evidence shows that he was the owner of the Peerless sedan driven by his wife; that the car had been given to him by his father as a wedding present; that he had authorized his wife to use it as a family car; and that it was customary for Mrs. Bisso to drive her mother, father, and sister to the theater. Under the doctrine announced in the case of Paderas v. Stauffer, 10 La. App. 50, 119 So. 757, 120 So. 886, we are of the opinion that Mr. Bisso is liable, because his wife, under the circumstances, was his agent just the same as if she had been a family chauffeur. See, also, Durel v. Flach, 1 La. App. 758; Cohen v. Hill (Tex. Civ. App.) 286 S. W. 661; Plasch v. Fass, 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446."

It is therefore ordered, adjudged, and decreed that the judgment in favor of Charles G. Battalora, Jr., be and it is affirmed, at the cost of defendants; and it is further ordered, adjudged, and decreed that the judgment in favor of Mrs. Charles G. Battalora, Jr., be and it is amended by increasing the amount thereof to $3,000, and, as thus amended, it is affirmed, at the cost of defendants.