## BACHER v. HIGGINS.
### No. 14681.

Court of Appeal of Louisiana. Orleans.
Dec. 10, 1934.

Alvin R. Christovich and St. Clair Adams, Jr., both of New Orleans, for appellant.

Cameron C. McCann, of New Orleans, for appellee.

JANVIER, Judge.

This is an action ex delicto in which William Bacher claims of Donald Higgins $281 for personal injuries and for damage sustained by his Studebaker automobile when that car, driven by Bacher, came into collision with a Ford automobile owned and driven by Donald Higgins.

Higgins, denying fault on his part and charging that the proximate cause of the collision was the negligence of Bacher, by reconventional demand claims of Bacher the sum of $404.05 for personal injuries and for damage sustained by his Ford automobile.

In the First city court for the city of New Orleans there was judgment dismissing both the main and the reconventional demands; the judge a quo having reached the conclusion that "both the plaintiff as well as the defendant and reconvener were at fault."

Plaintiff, Bacher, appealed, and defendant and plaintiff in reconvention answered the appeal. When the matter was first presented to us, we considered only the contention of Bacher that, since Higgins had not himself appealed from the judgment dismissing his reconventional demand, the judgment in so far as it dismissed that demand had become final. We concluded that by answering the appeal defendant had done all that was necessary to

authorize us to consider the reconventional demand, and therefore now consider both the claim of plaintiff, Bacher, and the claim of defendant and plaintiff in reconvention, Higgins. See Bacher v. Higgins (La. App.) 156 So. 826.

The collision took place at the corner of Dryades and Robert streets, this city, at a few minutes after 6 o'clock in the morning on December 9, 1932, when it was yet sufficiently dark to require that headlights be used.

Both streets are what is known as one-way streets; traffic on Dryades street being limited to that proceeding towards the downtown or business section of the city, and vehicles on Robert street being required to proceed only in the direction of the Mississippi river.

The Ford on Dryades street was proceeding down town and the Studebaker on Robert street was going towards the river, so that the Studebaker approached from the left-hand side of the driver of the Ford. Thus, if both arrived at the intersection at approximately the same time, the driver of the Ford was entitled to proceed, because in the governing traffic ordinance of the city of New Orleans, No. 13702, C. C. S., there appears paragraph (a) of section 10 of article VI, which reads as follows: "On all streets, except through streets and boulevards, and at intersections of right-of-way streets with one another, all vehicles approaching intersecting streets from the left shall give right-of-way to vehicles approaching from the right."

Bacher concedes that Higgins was approaching from the favored direction, but he maintains that he himself had already entered the intersection, and had not only preempted it, but had almost completely crossed it, when his car was hit in the side by the Higgins car, and that thus Higgins was not entitled to the right of way which would have been his had the two vehicles entered the intersection at approximately the same time, because in the same ordinance in paragraph (d) of the same section of the same article it is provided that: "* * * The right-of-way given applies only where two vehicles approaching intersecting streets arrive at the intersection at approximately the same time, and does not authorize the vehicle traveling on the right-of-way street to disregard the rights of vehicles which have already entered the intersection from an intersecting street."

■ It is very evident that the Bacher car did, in fact, enter the intersection first because the point of impact was located on the far side of Dryades street and because it was the front of the Ford that hit the right side of the Studebaker. Of these facts the evidence leaves no room for doubt. It is also apparent that the Ford arrived at the intersection at a speed considerably in excess of that permitted on that particular street, and even more in excess of the speed permitted at that particular corner, because, as Higgins reached the intersection, there was facing him on the sidewalk a sign, placed there by the police department, bearing in large letters the word "Slow." Reference to the oft-cited ordinance (article I, final paragraph) discloses the fact that, where such a sign is placed, speed shall not exceed 8 miles per hour. Had the speed of the Higgins car been not more than 8 miles per hour, or had it been even as great as 15 or 18 miles per hour, its driver, on seeing the Studebaker in the intersection ahead, could easily have brought it to a stop, or swerved it to the left, and thus avoided the disastrous results which ultimately occurred. Therefore we have no difficulty in concluding, not only that Mr. Higgins was at fault, but also that there was direct causal connection between his negligence and the ensuing accident.

■ But, in calling our attention to the provision of the ordinance requiring a speed of not more than 8 miles per hour where such "Slow" signs are located, Mr. Bacher is "hoist with his own petard," because facing him also was a "Slow" sign exactly like the one which faced Mr. Higgins, and it is quite evident that Mr. Bacher's speed was also much in excess of that permitted by the ordinance under such circumstances.

Mr. Bacher's evidence as to his speed as he entered the intersection is not so definite as it might be, and we find therein his own statement that, as he approached Dryades street where the "Slow" sign was located, his speed was "about twenty, possibly less than that." Just before he reached the corner, when he was still some 20 or 25 feet away, he saw the Higgins car approaching, and he estimated that its speed at that time was about 45 or 50 miles per hour, and that it was about 105 to 110 feet up Dryades street. It must have been evident that for him to cross in safety the speed of the Higgins car would have to be reduced, but, in spite of this, he proceeded into the intersection into the path of the oncoming Ford, knowing that, unless the speed of the latter should be substantially reduced, there must be a collision. This constituted further negligence on his part.

Had he reduced his speed to 8 miles per hour when he reached the "Slow" sign, he

801

could, and no doubt would, have stopped his car, and would have permitted the Ford to pass ahead of him. His failure to do so constitutes contributory negligence on his part.

The facts of this case resemble to a remarkable degree those which we found in the matter of Battalora v. Carnahan Creamery et al., 157 So. 612, decided by us November 26, 1934. There we considered just such a situation, and held both automobile drivers at fault.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.